UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Criminal No: 11-51-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT JASON CHAPMAN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Richard Meade seeks the Court's recusal and, in so doing, in essence poses this question: if a judge rules against you does that raise a presumption of bias that counsels in favor of recusing? The answer is not only "no", but of course not.

**I**

While the Court acknowledges that other, earlier filed, motions remain pending, the Court must first rule on recusal in determining whether it may hear the remaining pending motions. The trial in this matter began on February 25, 2013 [R. 591] and lasted for 14 days. [R. 615.] The jury found Defendant Mark Justice and Richard Meade guilty. [R. 615; 616; 618.] There are currently pending a number of substantive motions.

On April 1, 2013, the United States filed a Motion for an evidentiary hearing on the issue of forfeiture. On April 2, Mr. Justice filed a motion for a new trial [R. 624] and on the next day he filed a motion to set aside the verdict. [R. 625.] On July 16, Mr. Meade requested release pending appeal. [R. 701.] On August 8, Mr. Meade filed a motion to arrest judgment and dismiss the indictment for failure to change an offense.

[R. 711.] The next day, Mr. Justice joined in Mr. Meade's motion to arrest judgment. [R. 712.] He also filed a motion for bond pending appeal the same day. [R. 713.] On August 23, Mr. Meade objected to the Court hearing any further proceedings in this matter before ruling on his previously filed motion to arrest judgment. [R. 725, referring to R. 711.]

The issue currently before the Court relates to events transpiring out of the following motions. First, on August 28 and 29, the United States filed a motion and amended motion to show cause regarding the allegedly inappropriate tactics employed by defense counsel, [R. 729; 730] which has been fully briefed. [R. 733; 740.] Then, on September 3, Mr. Meade filed a motion requesting the Court's recusal, [R. 734.], which has also been briefed [R. 739; 742]. These two strings of motions are very much interrelated, however, it is the recusal motion that will be addressed first. Finally, on September 12, Mr. Meade filed a motion for attorney's fees and sanctions. [R. 743.]

## II

### A

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[A] judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise.' " *Scott v. Metro. Health Corp.,* 234 F. App'x 341, 352 (6th Cir. 2007) (quoting *United States v. Denton,* 434 F.3d 1104, 1111 (8th Cir. 2006)). In the Sixth Circuit, "[a] judge must recuse 'if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.' " *United States v. Tolbert*, 459 F. App'x 541, 545 (6th Cir. 2012) (quoting *United States v. Sammons,* 918 F.2d 592, 599 (6th Cir. 1990) (citations

and internal quotation marks omitted)). The recusal standard is objective, hence a judge "need not recuse himself based on the subjective view of a party, no matter how strongly that view is held." *Id.* (quoting *U.S. v. Sammons,* 918 F.2d at 599 (citations and internal quotation marks omitted)). Absent a showing that the alleged partiality stems from an "extra-judicial source or personal bias, recusal is only necessary in rare circumstances." *Id.* (citing *Liteky v. United States,* 510 U.S. 540, 555 (1994)). The Supreme Court explains that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555 (1994)). "[J]udicial rulings alone almost never constitute a valid basis for a bias or impartiality motion." *Id.* (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966)).

**B**

Meade argues that the Government's request for a show cause hearing regarding the behavior of defense counsel [R. 730] was inappropriate and has placed the Court in the middle of a Catch-22 where any future ruling the Court might make will inevitably result in the Court appearing partial. [R. 734 at 2.] Meade argues that ruling in the Government's favor "would appear to confirm the bias implied by the government's show cause motion" and that ruling in favor of Mr. Meade would "create speculation as to whether His Honor did so as a means of disproving and distancing himself from the implications of the government's motion, and to avoid any potential claims of misconduct in the future." [R. 734 at 2.] Defense counsel goes on to provide a laundry

3

list of reasons why "there is no possible way that any attorney in his right mind would ever believe that <u>any</u> court would ever grant" the government's motion to show cause. [R. 734 at 3.] The Court will not, and finds it unnecessary to, delve substantively into these underlying assumptions before resolving the larger question of recusal.

The Government argues there "are no facts that demonstrate that the trial judge favors either party in any way" and contends that Meade's argument "erroneously implies that the Court is incapable of making a decision based on the law and facts." [R. 739.]

Little of the reply filed by the defendants directly addresses the issue of recusal. Rather, this pleading was used as a vessel in which defense counsel argumentatively pours opinions regarding other motions presently before the court. [R. 742.] Two pages of this reply are dedicated to the issue of the Court's recusal. [R. 742 at 10-12.] In those two pages, defense counsel summarizes their grounds as follows:

> the most compelling justification for recusal is, first, the entire content of the government's show cause motion, the plainly applicable law to that motion which the government cited itself in its own briefing, and the fact that no attorney in their right mind would file such an offensive, frivolous, absolutely meritless constitutional abomination and assault on the Court's integrity like that, let alone do so right after he or she had just been caught violating the Duty of Candor, unless that attorney were also counting on the bias and protectivism implied therein.[1]
>
> Raising additional questions as the currently presiding judge's impartiality are: (1) Doc. 345[2] and its result; (2) the fact that opposing counsel has accused other defense attorneys of impropriety in its filings in this case without consequence; (3) the fact that the government brought its contempt motion on behalf of the currently presiding judge himself, and even worse; (4) the fact that it continues to claim that the undersigned attorney has accused him of committing misconduct, even though she explained exactly why that would be impossible…

[R. 472 at 11.]

---

[1] This argument is what Defense Counsel frequently refers to as the "bias implied by the government's show cause motion."
[2] Document 345 is the Government's October 9, 2012 "Motion for relief from deliberate creation of prejudicial pretrial publicity."

4

In applying the law, it is clear that the Court need not recuse. The starting point of the Court's analysis is the presumption that the judge is impartial. *Scott v. Metro. Health Corp.*, 234 F. App'x at 352. No suggestion has been made that this Court has acted partially based on either an extra-judicial source or on the basis of personal bias. In fact, no suggestion has been made that this Court has issued a biased or prejudiced ruling. Rather, Defense Counsel argues that the Court's future rulings will leave the Court appearing biased as a result of the allegedly inappropriate arguments being advanced by the Government. If this were the standard for recusal – that a judge's participation in a case hinged on the quality or appropriateness of counsel's arguments, then a Judge would seldom enjoy hearing a case from beginning to end.

Defense counsel suggests that no attorney would file the pending show cause motion absent that attorney "counting on the bias and protectivism implied therein." [R. 472 at 11.] This is a wildly speculative argument that rests on no substantive foundation. The Court has not ruled on this motion. The argument advanced is that the Court needs to recuse itself before ruling on the show cause motion because the ruling will inexorably leave the Court appearing biased. This is argued without knowing how the Court will rule. It is possible the Court could choose to grant the show cause, deny the show cause, grant the show cause and find the behavior of counsel acceptable (or find the behavior of both government and defense counsel reprehensible) or deny the show cause and sanction neither, one or both parties. To speculate that *any* outcome leaves the Court appearing biased is not objectively reasonable. This is especially true, considering that "judicial rulings alone almost never constitute a valid basis for a bias or impartiality motion." *Liteky v. United States,* 510 U.S. at 555). Besides being unreasonable, the idea that a

Judge might anticipatorily recuse himself based on the potential future appearance of impropriety raises larger institutional issues.

First, while the Court does not rule out the possibility that situations exist where judges are forced out of proceedings solely by the parties arguments, this should be the exception and not the rule.[3] To grant motions to recuse in situations designed by the parties, and out of the control of the judge, would encourage counsel to more frequently employ such tactics whenever a party could potentially benefit from the recusal. Defense counsel suggests that there is no "compelling justification for His Honor to keep this case" but the Court disagrees. [R. 742.] Beyond the practical reasons for the Court keeping this case (which the Government outlines in their Response), institutional motivations also support this outcome. "A motion to recuse may not be used for the purpose of judge or forum shopping." *United States v. Baker*, 441 F. Supp. 612, 615 (M.D. Tenn. 1977). While the Court makes no such accusation against the parties herein, this consequence must be considered. Second, the Court also considers the timing of the motion to recuse. Defense counsel filed this motion immediately following, and in response to, a very direct and personal request by the Government for a show cause hearing which would call into question the statements and behavior of counsel. While this certainly does not qualify as an adverse action, the Court believes that in the context of this reactionary filing, it is most important to remain involved in the case. *See U.S. v. Sierra Pacific Industries*, 759 F.Supp.2d 1198 (E.D. Cal. 2010) ("The obligation not to recuse is perhaps at its highest when the motion has been brought after the party seeking

---

[3] See e.g. *In re Olson*, 20 B.R. 206, 207 (D. Neb. 1982) ("In exercise of his discretion, bankruptcy judge should have recused himself, since he was aware that debtor and one of his employees had made accusations of improper conduct against him to various government officials, even if accusations were made solely to support the disqualification motion".)

recusal has sustained an adverse ruling in the course of the action."). Finally, granting anticipatory and unnecessary motions to recuse would place a huge strain on the resources of the judiciary.

No showing has been made of an extra-judicial source or of personal bias, so the question that remains is whether the facts in this case present one of the remaining "rare circumstances" where recusal is necessary. *U. S. v. Tolbert*, 459 F. App'x at 545 (citing *Liteky v. United States,* 510 U.S. at 555). The Defense has not identified any ruling that or action that shows a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. at 555). As previously discussed, the Defense's primary argument rests on a hypothetical future ruling of the Court and, they argue, the inevitable resulting appearance of impropriety. Defense counsel has provided this Court no case law which supports this request and, it is the determination of the Court, that it is unreasonable.

**III**

The parties have, in these motions, made reference to many other outstanding motions that are before the Court. Now that this motion has been resolved, the Court will turn to responding to these pending motions and, ultimately, to sentencing.

Finally, the Court is compelled to address the general tone of these proceedings. If the parties take issue with each other or with this Court there are forums and processes where substantiated complaints might be levied and heard. The Court encourages the parties to professionally advance these arguments in any and all appropriate forums with the respect, courtesy and integrity that are required by our profession. This Court is not a forum in which adversaries may practice deceit or hurl insults at one another without

7

recourse. This Court expects all parties who appear before it to proceed with honesty, integrity, and candor toward each other and the Court. These standards are explicated in both the Kentucky Rules of Professional Conduct and the Local Rules.[4] Should either party fail to exercise these virtues, this Court is empowered to impose the sanctions necessary to enforce them.

Accordingly, and the Court being sufficiently advised, it is **HEREBY ORDERED** that Meade's Motion for Recusal [R. 734] is **DENIED**.

This 29th day of October, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[4] *See* SCR 3.130(8.2), *Judicial and legal officials,* stating ((a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."); *See also* SCR 3.130(8.4), *Misconduct* stating ("It is professional misconduct for a lawyer to:… (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation"); *See also*, LCrR 57.3, *Attorney Discipline* stating ("Any attorney practicing before the Court is subject to discipline by the Court upon a showing that:… (2) The attorney is guilty of unprofessional conduct in the matter pending before the Court.")